### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **CHAPTER 7** |
| **Samuel Jay Boyd,** | ) | |
| | ) | **CASE NO. 08-71119** |
| Debtor. | ) | |

| | | |
|---|---|---|
| **Samuel Jay Boyd,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ADVERSARY PROCEEDING** |
| v. | ) | **NO. 16-07008** |
| | ) | |
| **New Peoples Bank, Inc.,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This matter is before the Court on an adversary proceeding complaint filed by the Debtor, Samuel J. Boyd (the "Debtor"), against New Peoples Bank, Inc. (the "Bank") for violation of the discharge injunction. The Bank subsequently filed a Motion to Dismiss the Complaint and brief in support thereof, and an Answer to the Complaint. The Debtor later filed a "Motion for Judgment on Issue of Liability."[1] The parties subsequently filed reply briefs in support of their respective positions. On May 4, 2016, the Court held a hearing on the motions, which the Court

---

[1] The Debtor filed a "Motion for Judgment on Issue of Liability" pursuant to Bankruptcy Rule 7012(c). No "Rule 7012(c)" exists in the Federal Rules of Bankruptcy Procedure. However, Rule 12(c), made applicable to adversary proceedings by Rule 7012(b), provides for a motion for judgment on the pleadings. *See Allen v. RIB Det. Equip., Inc. (In re Roanoke Iron & Bridge Works, Inc.)*, 82 B.R. 25, 26 (Bankr. W.D. Va. 1987); Fed. R. Bankr. P. 7012(b); Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is appropriate if there are no issues of material fact and "only questions of law remain." *Crossroads Equity Partners, LLP v. Dogmatic Prods., Inc.*, 2016 WL 1625644 (W.D. Va. Apr. 20, 2016), *appeal filed*, (4th Cir. May 4, 2016). In reviewing a Rule 12(c) motion, the Court should apply the same standard that would apply to a Rule 12(b)(6) motion, and may consider exhibits attached to the pleadings. *See Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014). However, since the Debtor has filed his own affidavit in opposition to the Defendant's Motion to Dismiss, the Court will treat the Debtor's motion as one for summary judgment and apply the standard applicable for such motions as opposed to the standard applicable to a motion to dismiss. *See, e.g., Williams v. Branker*, 462 Fed. App'x 348 (4th Cir. 2012) (citing Fed. R. Civ. P. 12(d); *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007)) ("A court may convert a Rule 12 motion into a summary judgment proceeding in order to consider matters outside of the pleadings.").

treated as cross-motions for summary judgment pursuant to Rule 7056 of the Federal Rules of

Bankruptcy Procedure and Rule 56 of the Federal Rules of Civil Procedure.  Following the

hearing, the Court took the matter under advisement.  For the reasons set forth below, the Court

will grant the Debtor's motion for summary judgment on the issue of liability, and will set a

further hearing on the issue of damages.


<u>FINDINGS OF FACT</u>

On June 16, 2008, the Debtor filed a voluntary petition under Chapter 7 of the

Bankruptcy Code.  Schedule D filed by the Debtor, as amended on September 9, 2008, listed the

following debts owed to the Bank: (1) a $13,505.00 debt secured by a 2003 Ford F-350 vehicle;

(2) a $78,922.00 secured debt and a $50,422.00 unsecured debt in connection with a Deed of

Trust held by the Bank on real property located in Dickenson County, Virginia, Tax ID 145D-

1119 (the "Property"); and (3) a $6,042.00 debt secured by a 1999 Ford Mustang and a 4-

wheeler.  (Docket No. 1.)  The Debtor's Statement of Intention advised that the debt secured by

the 1999 Ford Mustang and 4-wheeler would be reaffirmed.  The Debtor's Statement of Intention

also listed the following regarding the debt on the 2003 Ford F-350 vehicle and the debt owed on

the Property: "Debtor will retain collateral and continue to make regular payments."  *Id.*  On

September 9, 2008, the Court entered an Order discharging the Debtor (the "Discharge Order").

The Debtor's case was a "no asset" case.  Thus, no assets were administered, no claims were

filed, and no determinations were made regarding the debt owed to the Bank.  Further, no

reaffirmation agreements were filed as to any debt owed to the Bank.

On February 10, 2016, the Debtor filed a Motion to Reopen Chapter 7 Case.  The Motion

to Reopen alleged that a representative of the Bank contacted the Debtor and "convinced him

that he was required to continue making payments on the discharged debt," and that the Debtor believed the representatives and continued making payments totaling $39,871.00 to the Bank following issuance of the Discharge Order.  (Docket No. 23.)  The case was reopened by Order entered on February 12, 2016.  (Docket No. 24.)  On February 17, 2016, the Debtor filed the current adversary proceeding.

The Complaint alleges that, at the time of filing the Chapter 7 case, the Debtor was indebted to the Bank in connection with multiple loans, one being Loan No. 25038578 in the amount of $85,264.30.  Compl. ¶ 9.  The Debtor alleges that this debt was discharged.  *Id.*  The Bank admits these allegations.  Answer ¶ 9.

The Complaint further alleges that, in August 2012, "the Debtor was informed by the Bank that he was required to make a new loan and on October 9, 2012, the Bank made [L]oan [No.] 700055544 to the [Debtor] in the amount of $47,700.32, the proceeds of which were used to payoff the previously discharged debt."  Compl. ¶ 11.  Further, the Debtor alleges that Loan No. 700055544 matured by its terms in 2013, and on October 23, 2013, the Bank made another loan to the Debtor, Loan No. R700055544 in the amount of $46,669.52, to repay the previously discharged loan.  *Id.* ¶ 12.  The Bank admits that it extended the new loans to the Debtor post-discharge, but it contends the Debtor requested the loans.  Answer ¶¶ 11, 12.  The Debtor further alleges that he paid a total of $39,871.00 to the Bank on previously discharged debt, which the Bank denies.  Compl. ¶ 14; Answer ¶ 14.  The Complaint alleges that the Bank willfully violated the discharge injunction of 11 U.S.C. § 524 by "willfully and intentionally call[ing] and successfully collect[ing] funds from the [Debtor] to make payment of the discharged debts, . . . seiz[ing] funds from the Debtor, and ma[king] numerous calls and letters to the Debtor, causing him great distress and worry."  Compl. ¶ 16.  The Plaintiff requests that actual damages and

punitive damages, including legal fees incurred, be imposed against the Bank pursuant to 11

U.S.C. § 105.  *Id.* ¶ 20.

In its Motion to Dismiss, the Bank asserts that the Complaint fails to state a claim upon

which relief can be granted as neither 11 U.S.C. § 105 nor § 524 provide for a private right of

action by the Debtor, nor do the statutes provide for actual or punitive damages in favor of the

Debtor.  Mot. to Dismiss ¶ 1.  The Bank further asserts that any acts of the Bank regarding Loan

No. 700055544 "could only be in furtherance of enforcing an obligation first existing <u>after</u> entry

of the discharge in the underlying bankruptcy case."  *Id.* ¶ 2 (emphasis in original).  Thus, the

Bank asserts that the provisions of 11 U.S.C. § 524 are inapplicable.  *Id.*  Additionally, the Bank

asserts that any communications were not made in an attempt to collect upon the referenced

loans as a personal liability.  *Id.* ¶ 3.

The Affidavit of Janet Silcox, Assistant Vice President of the Bank (the "Silcox

Affidavit"), filed with the Bank's Memorandum in Support of its Motion to Dismiss, states that,

prior to the Debtor's discharge, the Debtor was "personally indebted to the Bank pursuant to the

terms of a note (Loan N[o.] 25038575) (the 'Original Note') secured by, among other things, [the

Debtor]'s principal residence."  Silcox Aff. ¶ 5(a); *see also* AP Docket No. 6, at 13-15.

Moreover, the Silcox Affidavit states that "[a]lthough the [Debtor]'s underlying personal liability

under the Original Note was discharged, the Bank's liens securing the Original Note remained."

Silcox Aff. ¶ 5(a).  Further, the Silcox Affidavit states that the Debtor continued to make loan

payments, after the discharge, to the Bank via automatic debit payments from an account

maintained by the Debtor at the Bank.  *Id.*  Further, the Silcox Affidavit alleges that "the Bank

has no record of having issued notices to the [Debtor] requesting payment of installment

payments required pursuant to the Original Note.  The Original Note matured on July 25, 2012 by its terms."  *Id.*; *see also* AP Docket No. 6, at 13-15.

According to the Silcox Affidavit, after the Original Note matured on July 25, 2012, the Debtor requested and executed a new secured note dated October 9, 2012 (Loan No. 700055544) (the "Second Note") individually and as attorney-in-fact for the Debtor's father in the principal amount of $47,700.32.  Silcox Aff. ¶ 5(b); *see also* Docket No. 6, at 17-18.  Further, the Silcox Affidavit alleges that the Debtor then requested a new loan with a lower monthly payment due to the Debtor being on a fixed income.  Silcox Aff. ¶ 5(b).  The Bank asserts a certain Certificate of Deposit ("CD") pledged as collateral to secure the Original Note was applied to the outstanding balance due to the Bank.  *Id.*  This resulted in a lower monthly payment under the Second Note. *Id.*  The Debtor continued to make payments under the Second Note via automatic debit until the Second Note matured on October 23, 2013.  *Id.* ¶ 5(c).  The Bank alleges that, when the Second Note matured, the Bank did not receive the balance due, and the Debtor again requested a new loan from the Bank.  *Id.*

The Debtor then executed a third secured note on October 23, 2013 (the "Third Note"). *Id.* ¶ 5(d); *see also* AP Docket No. 6, at 19-20.  Thereafter, the Bank received payments under the Third Note via automatic debit from the Debtor through June 2015.  Silcox Aff. ¶ 5(d).  At that time, the Bank's records show that the Debtor advised the Bank to terminate the automatic payment feature because the Debtor's attorney had advised the Debtor that no further payments were required to be made under the Third Note.  *Id.*

The Original Note, Second Note, and Third Note were each secured by the Debtor's principal residence.  *Id.* ¶ 6.  The Bank alleges that, "[a]t all times between the September 9, 2008 Chapter 7 discharge granted to [the Debtor] and his execution of the Second Note, any

interactions between the Bank and the [Debtor] occurred in the ordinary course of the Bank's

business and for the purposes of seeking or obtaining installment payments associated with the

Bank's valid lien in lieu of pursuing the enforcement of its lien."  *Id.* ¶ 7.

      In its Motion for Judgment on Issue of Liability, the Debtor argues that, in the Silcox

Affidavit, the Bank "admits that it prepared and had the Debtor sign two promissory notes, both

being prepared after discharge with full knowledge of both the filing of the bankruptcy and the

discharge," and that "[s]uch admissions entitle the [Debtor] to judgment as a matter of law on the

issue of liability."  Pl.'s Mot. for J. on Issue of Liability, at 1.  The Affidavit of Samuel J. Boyd

(the "Boyd Affidavit") filed by the Debtor states that Janet Silcox ("Ms. Silcox") was not

involved in any loan the Debtor had with the Bank until 2012.  Boyd Aff. ¶ 3.  In addition, the

Debtor states that he dealt with the Bank representative Mike Owens on all of his dealings with

the Bank concerning the First Note.  *Id.*  Further, the Debtor stated that, at the time of his

bankruptcy filing in 2008, both the Debtor and his father resided in the houses that served as

collateral for the loan to the Bank.  *Id.* ¶ 4.  However, sometime after 2010, the Debtor's father

was apparently moved into a nursing home, and the Debtor developed a health problem that

"would not permit [the Debtor] to live in [his] home any longer."  *Id.*  The Debtor stated that he

did not authorize any automatic debits from his bank account at that time, and made payments

using a payment book provided to him by the Bank.  *Id.*

      After the loan under the Original Note matured in 2012, the Debtor claims he never

requested that a new loan be made.  *Id.* ¶ 5.  The Debtor alleges that Ms. Silcox called the Debtor

and told him to "come down to the [B]ank and execute a new note."  *Id.*  The Debtor further

alleges that he never told Ms. Silcox that the loan could not be paid, but he did tell Ms. Silcox

that he could not make a payment of $800 per month because of the Debtor's reduced income,

since he was on Social Security disability.  *Id.*  In addition, the Debtor states that Ms. Silcox told

the Debtor she would "take the certificate of deposit that [the Debtor's] father had pledged for

the loan, as she put it, for 'a good faith payment.'"  *Id.*  According to the Debtor, this is what led

to the lower payment on the loan.  *Id.*  Further, the Debtor states that at no time did Ms. Silcox

ever tell the Debtor that he "had no obligation to sign the note, nor make any payments even

though she knew [the Debtor's] debt to the [B]ank had been discharged."  *Id.*  In addition, the

Debtor claims that Ms. Silcox told him that if his loan was more than seven days late, the

"contract would be void" and the Bank could foreclose on the Property.  *Id.*  Thus, the Debtor set

up payments via automatic debit at that time, "not knowing that [the Bank] had no ability to

collect any money from [the Debtor] at all."  *Id.*

In the Boyd Affidavit, the Debtor further alleges that, in October 2013, after the Second

Note matured, the Debtor did not request a new note.  *Id.* ¶ 6.  Instead, the Debtor claims that

Ms. Silcox called him and told him that a new note was ready for his signature, and the Debtor

subsequently signed the new note, the Third Note.  *Id.*  In addition, the Debtor claims that Ms.

Silcox neither told him that his debt to the Bank had been discharged, nor that the Debtor had no

obligation to sign a new note.  *Id.*  The Debtor then alleges that, after the Debtor "learned from a

former employee of the [B]ank" that he had not been treated correctly, the Debtor stopped

making payments on the Third Note.  *Id.* ¶ 7.  Further, the Debtor claims that Ms. Silcox then

called him on the telephone on at least two occasions to collect on the Third Note, and in

addition, the Debtor received seven notices from the Bank to collect on the Third Note.  *Id.*

Finally, the Debtor alleges that he does not believe the Bank was acting to protect its lien

because it knew that neither the Debtor nor the Debtor's father was living on the Property.

*Id.* ¶ 8.  In addition, the Debtor alleges that the Bank knew that the Debtor had canceled

insurance on both of the properties because the Debtor could no longer afford insurance and the

Debtor's father was living in a nursing home.  *Id.*  Thus, the Debtor claims that all the payments

he made were not to protect collateral that the Debtor no longer had any use for and the Bank

knew was in disrepair and unlivable.  *Id.*

CONCLUSIONS OF LAW

This Court has jurisdiction of this matter by virtue of the provisions of 28 U.S.C. §§

1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on

December 6, 1994, and Rule 3 of the Local Rules of the United States District Court for the

Western District of Virginia.  This Court further concludes that this matter is a "core" bankruptcy

proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I) and (O).

As a preliminary matter, pursuant to Rule 7012(b) of the Federal Rules of Bankruptcy

Procedure and Rule 12(d) of the Federal Rules of Civil Procedure, the Defendant's Motion to

Dismiss and the Plaintiff's Motion for Judgment on Issue of Liability must now be treated as

cross-motions for summary judgment under Rule 7056 of the Federal Rules of Bankruptcy

Procedure and Rule 56 of the Federal Rules of Civil Procedure because matters outside the

pleadings were presented to and not excluded by the Court and all parties were given a

reasonable opportunity to present all the material that is pertinent to the motion.  *See Eldridge v.*

*Bouchard*, 620 F. Supp. 678, 680 (W.D. Va. 1985).  The Court must grant summary judgment

where the movant "shows that there is no genuine dispute as to any material fact" and that the

movant "is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56; *see also* Fed. R. Bankr.

P. 7056 (stating that Rule 56 applies in adversary proceedings).  The Supreme Court has

determined that "at the summary judgment stage the judge's function is not himself to weigh the

evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Under Rule 56, the movant bears the initial burden of showing that no material issues of fact exist.  *See Wachovia Bank, N.A. v. Commonwealth Sprinkler Co. (In re Commonwealth Sprinkler Co.)*, 296 B.R. 694, 699 (Bankr. E.D. Va. 2001).  Once the movant demonstrates that no genuine issues of material fact exist, the burden shifts to the party opposing summary judgment to establish that questions of fact do exist.  *See Comerica Bank, N.A. v. Weinhardt (In re Weinhardt)*, 156 B.R. 677, 679 (Bankr. M.D. Fla. 1993).  Ultimately, the court must then view the evidence presented in a light most favorable to the nonmoving party.  *See Interim Inv. Comm. v. Jacoby*, 90 B.R. 777, 780 (W.D.N.C. 1998), *aff'd*, 914 F.2d 1491 (4th Cir. 1990).[2]

Section 524(c) of the Bankruptcy Code provides the following:

An agreement between a holder of a claim and the debtor, the consideration for which, *in whole or in part*, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable nonbankruptcy law, whether or not discharge of such debt is waived, only if—

(1) such agreement was made before the granting of the discharge under section 727, 1141, 1228, or 1328 of this title;

(2) the debtor received the disclosures described in subsection (k) at or before the time at which the debtor signed the agreement;

(3) such agreement has been filed with the court and, if applicable, accompanied by a declaration or an affidavit of the attorney that represented the debtor during the course of negotiating an agreement under this subsection, which states that—

(A) such agreement represents a fully informed and voluntary agreement by the debtor;

(B) such agreement does not impose an undue hardship on the debtor or a dependent of the debtor; and

---

[2] The Debtor filed this action as an adversary proceeding, and the Bank contends that the allegations and posture of the case reflect pursuit of a private right of action for violation of the discharge injunction, which the District Court held not to exist in *Lovegrove v. Ocwen Loan Servicing, LLC*, 2015 WL 5042913 (W.D. Va. 2015).  While the Debtor does appear to seek a money judgment against the Debtor, the Debtor also seeks a finding of contempt for violation of the discharge order.  *Lovegrove* expressly recognized the court's civil contempt power to enforce the discharge injunction.  *Id*. at *7.  The Court agrees that the request for a money judgment is improper, but in the interests of judicial economy will allow the matter to proceed as one for civil contempt.

(C) the attorney fully advised the debtor of the legal effect and consequences of—

(i) an agreement of the kind specified in this subsection; and(ii) any default under such an agreement;

(4) the debtor has not rescinded such agreement at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the holder of such claim;

(5) the provisions of subsection (d) of this section have been complied with; and

(6)(A) in a case concerning an individual who was not represented by an attorney during the course of negotiating an agreement under this subsection, the court approves such agreement as--(i) not imposing an undue hardship on the debtor or a dependent of the debtor; and(ii) in the best interest of the debtor.

(B) Subparagraph (A) shall not apply to the extent that such debt is a consumer debt secured by real property.

11 U.S.C. § 524(c) (emphasis added).    In addition, the Court may enforce the provisions of Section 524(c) through its Section 105(a) power.  *See, e.g.*, *Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 445 (1st Cir. 2000) ("[A] bankruptcy court is authorized to invoke § 105 to enforce the discharge injunction imposed by § 524 and order damages . . . if the merits so require.").

In *In re Stevens*, the bankruptcy court determined that Section 524(c) "places little emphasis on whether the new consideration is sufficient, rather the thrust of the issue is whether any part of the consideration is based on a debt that is otherwise dischargeable." *Liptz & Roberts, Chtd. Pension Plan Trust v. Stevens (In re Stevens)*, 217 B.R. 757, 761 (Bankr. D. Md. 1998).  Similar to the Bank's argument in this case, the plaintiffs in *In re Stevens* argued that the existence of new consideration resulted in the new notes not being subject to a previous discharge in the debtor's bankruptcy case.  However, the bankruptcy court found the "new consideration" argument neither instructive nor persuasive, primarily because the cases cited by the plaintiff "focused only on the existence of new consideration rather than whether the former discharged obligation constituted any part of the consideration." *Id.* at 760.  As the *Stevens* court aptly stated, "§ 524(c) does not state . . . that the existence of new consideration takes the agreement out of a § 524 examination.  Instead, § 524(c) specifically states if the consideration

10

'in whole *or in part*, is based on a debt that is dischargeable,' the agreement must comply with the reaffirmation requirements (emphasis added)." *Id.* at 761 (citing 11 U.S.C. § 524(c)).

Here, the undisputed facts reflect that the Bank issued the Second Note to the debtor after liquidating the $19,000 CD pledged as collateral under the Original Loan, then had the Debtor sign a Third Note. Further, the Bank continued to accept payments until, at some point, the Debtor contacted an attorney. Regardless of whether Ms. Silcox approached the Debtor, or vice versa, the Bank wrongfully violated the discharge injunction of Section 524. A dispute over which party contacted the other first is not a dispute over a material fact. As the *Stevens* court provided, "[t]he Code provides a specific procedure for debtors who wish to reaffirm their obligations. . . . Section 524 lists no exceptions to the reaffirmation rules." *Id.* There is no material fact in dispute regarding whether the two "new" notes constituted *agreements*, made by the Bank with the Debtor, that were based *in whole or in part*, on debt that was discharged within the scope of Section 524(c).

Several courts have held that, "where *any part* of the consideration for a post-petition agreement is based upon a discharged debt, the agreement must comply with § 524(c)." *Smith v. First Suburban Nat'l Bank (In re Smith)*, 224 B.R. 388, 397 (Bankr. N.D. Ill. 1998) (citing *In re Arnold*, 206 B.R. 560, 565 (Bankr. N.D. Ala. 1997); *Stevens*, 217 B.R. at 760)). Neither the Debtor nor the Bank attempted to reaffirm the debt by following the procedures of Section 524(c) before moving forward with the Second Note. There is no dispute the Bank knew that the Second Note refinanced a debt discharged in the Debtor's Chapter 7 bankruptcy case. The Bank was a creditor in the bankruptcy case and received a copy of the discharge order.[3] (*See* Docket

---

[3] The Bank contends it was on the horns of a dilemma. Once the note matured by its terms, it had little option other than to foreclose, or to make a new note to the Debtor to pay off the old debt. The Bank contends that if forbearance to foreclose is insufficient to avoid violating Section 524(c), it is being unduly penalized for failing to choose the foreclosure option. The Court does not believe the circumstances were so dire. The Debtor and the Bank

No. 20.)  As stated in *Lovegrove*, "a debtor must show, by clear and convincing evidence, that the creditor violated the discharge injunction and that the violation was willful, or, in other words, 'an intentional act with knowledge of the discharge injunction.'" *Lovegrove*, at *7.  *See also, In re Tucker*, 526 B.R. 616, 621 (Bankr. W.D. Va. 2015).  The Court believes that standard is satisfied here based on the facts before it.[4]

In re Odling* provides a solid explanation of why courts strictly interpret the provisions of Section 524(c):

> Interpreting this section to apply to postpetition agreements where all or part of the debtor's consideration is based on a discharged, prepetition debt is consistent with the Bankruptcy Code's purpose. Enabling a debtor to make a fresh start is one of the goals of bankruptcy law. *Cox*, 239 F.3d at 912. The reaffirmation rules are intended to protect debtors from compromising their fresh start by making unwise agreements to repay dischargeable debts. *In re Turner*, 156 F.3d 713, 715 (7th Cir.1998). Because section 524(c) permits a debtor to reassume debts of which he would otherwise be relieved, it is in tension with the goal of giving a debtor a fresh start. *Id.* at 718. Allowing a creditor to avoid section 524(c) postpetition would subvert the Code's careful balance.

*In re Odling*, 2001 WL 1155154, at *4 (N.D. Ill. Sept. 26, 2001).  Therefore, the Court finds that the Bank violated the discharge injunction of Section 524.

However, the Court makes no findings as to damages or as to other sanctions that may be appropriate.  "Compensatory damages, in addition to coercive sanctions, may be awarded as a sanction for civil contempt if a party willfully violates a section 524(a)(2) injunction."  *In re Harlan*, 402 B.R. 703, 710 (Bankr. W.D. Va. 2009).  It appears the Debtor was able to maintain his ownership interest in the Bank's collateral for an extended period of time, clearly up to and including the maturity date of the Original Note.  At least to that point, by making payments to

---

could have negotiated a change in terms of the existing *in rem* obligation by extending the maturity date or adjusting the payment terms, which maintained the *in rem* only nature of recourse.  The Debtor was also free to move the debt to a different lender, who was not the "holder of a claim" under Section 524(c).

[4] Although characterized as a motion for judgment on the issue of liability, which connotes a private right of action, the Court will treat the Debtor's motion as one seeking to establish whether the threshold issue is met for a finding of civil contempt.

the Bank, either by automatic draft or direct deposit, the Debtor was able to forestall the Bank

from exercising its *in rem* rights against its collateral.  In addition, the Fourth Circuit has held

that emotional distress is not an appropriate item of damages for civil contempt.  *Id.*; *see also*

*Burd v. Walters*, 868 F.2d 665, 670 (4th Cir. 1989).  The extent to which the Debtor was harmed

is simply not apparent based on the record at this time.

<u>CONCLUSION</u>

For the foregoing reasons, the Court will grant the Debtor's summary judgment motion

on the sole issue of whether the Bank violated the discharge injunction of 11 U.S.C. § 524.

However, the Court will set a further hearing to determine what sanctions, if any, may be

appropriate.

An Order to such effect will be entered contemporaneously herewith.

Decided this <u>27th</u> day of May, 2016.

UNITED STATES BANKRUPTCY JUDGE