**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | **CHAPTER 7** |
| **Samuel Jay Boyd,** | ) | |
| | ) | **CASE NO. 08-71119** |
| **Debtor.** | ) | |

| | | |
|---|---|---|
| **Samuel Jay Boyd,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **ADVERSARY PROCEEDING** |
| **v.** | ) | **NO. 16-07008** |
| | ) | |
| **New Peoples Bank, Inc.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

This matter is before the Court on an adversary proceeding filed by the Debtor, Samuel J. Boyd (the "Debtor"), against New Peoples Bank, Inc. (the "Bank") for violation of the discharge injunction. The Court found in its May 27, 2016 Memorandum Opinion and corresponding Order that the Bank violated the discharge injunction and set the matter for further hearing as to what sanctions, if any, may be appropriate. (Docket Nos. 17 & 18). Two pre-trial conferences were held, as were two separate telephonic hearings on discovery disputes. A hearing was held on November 3, 2016 where the Debtor and the Bank presented evidence. Both the Debtor and the Bank pre-filed exhibits with the Court. (Docket Nos. 33 & 35). The Court admitted those exhibits not objected to and addressed the objections to the remaining exhibits as the parties presented their evidence.[1] For the reasons set forth below, the Court will award the Debtor

---

[1] The Debtor's Exhibits 1, 3, 4, 5, 7, 9, 10, and 13 were admitted without objection. The Bank's Exhibit F was admitted without objection. The Bank's objections to the Debtor's Exhibits 2, 6, 11, and 12 were overruled. The Debtor stipulated that Exhibit 8 contained incomplete documents as filed and that the second page produced by the

$11,796.29 in actual damages, $5,500.00 in attorneys' fees, and $586.00 in court reporter fees. The Court finds no basis for an award of punitive damages.

FINDINGS OF FACT

On June 16, 2008, the Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code. At that time, the Debtor owed a $78,922.00 secured debt and a $50,422.00 unsecured debt in connection with a 2005 promissory note (the "Original Note") secured by a 2005 credit line deed of trust held by the Bank on two pieces of adjacent real property in Dickenson County, Virginia (the "Properties").[2] (Docket No. 1). According to testimony at the hearing, the Debtor's father, Samuel G. Boyd, was also liable on the Original Note.[3] The Debtor obtained a discharge on September 9, 2008. (Docket No. 16). At that time, the Debtor's personal liability for the indebtedness evidenced by the Original Note was discharged.

The Debtor did not sign or file any reaffirmation agreement on the debts he owed to the Bank. At the time he obtained his discharge, the Debtor was a beneficiary under an accidental injury and death insurance policy that continued to make payments of $750.00 per month on his secured obligation directly to the Bank. Dr. Ex. 13. The Debtor voluntarily paid the balance of $50.00 each month on that debt by automatic debit.

These payments continued until 2012, at which point the insurance policy was set to expire. In addition, the Original Note matured by its terms on July 25, 2012, and a balloon

Bank was included with each notice. As such, the Bank's objection to Exhibit 8 was overruled and the second page was admitted as the Bank's Exhibit N. The Debtor's objections to Exhibits A, C, and L were overruled. The Court now overrules the Debtor's objection to the Bank's Exhibit B and the exhibit stands admitted. The Bank never moved for the admission of pre-filed Exhibits D, E, G, H, I, J, K, or M and as such the Court does not address the Debtor's objections to these exhibits. The Debtor never moved for admission of pre-filed Exhibit 14 and as such the Court does not address the Bank's objection to this exhibit.

[2] One of these properties belongs to the Debtor and the other belongs to the Debtor's father. Both the Debtor and his father are grantors under the Bank's deed of trust. *See* Bank's Ex. B. Each property has been vacant for an extended period of time.

[3] The Debtor's father also filed bankruptcy and received a discharge. *See* Case No. 09-70621. However, the Debtor's father reaffirmed his personal liability to the Bank under the Original Note on May 13, 2009. *See* Bank's Ex. C. Further, the Debtor holds a general power of attorney over his father's affairs. *See* Bank's Ex. A.

payment became due at that time.  The Debtor testified that Janet Silcox, the Bank's local branch manager, called him, both in his individual capacity and in his capacity as power of attorney for his father, to let him know that the loan was maturing and to ask him "what his intentions were." Ms. Silcox testified that she informed him at that time that he would have to renew the Note if he wanted to continue to make payments on the Properties.  Ms. Silcox testified that the Debtor wanted to continue to pay for the house, and that he indicated he could afford a $600.00 payment at that time because he was on a fixed income. In addition, the Debtor testified that he told Ms. Silcox it was important to retain a lien on the properties so that there would be no equity that could adversely affect his father's Medicare eligibility.[4] The Debtor also testified, however, that at that time he did not care whether the Bank foreclosed as he had no use for either house. The Debtor testified that Ms. Silcox told him he had to come down and renew the Original Note because the insurance company had stopped making payments. The Debtor testified that he had no choice but to sign a new note because, given its maturity, the Bank wanted the total payment on the Original Note at that time. At no time did Ms. Silcox inform the Debtor that his personal liability had been discharged and he was under no obligation to reaffirm the debt or sign a new note.

The Debtor executed a new promissory note secured by the same deed of trust on October 9, 2012 (the "Second Note"). The Debtor continued to make payments under the Second Note by automatic debit until it matured on October 23, 2013. The Debtor then executed another promissory note (the "Third Note") and made payments by automatic debit until June 2015, at which time the Debtor advised the Bank to terminate the automatic payment feature. In total, the

---

[4] The Debtor's father was living in a rehabilitation facility at that time. He has since been moved to a nursing home. The Debtor has at times expected his father to return home to live in the Properties and made certain improvements to the Properties in anticipation of his return, but has since determined that his father is unlikely to return to live in the Properties due to the level of medical care he requires.

Debtor paid $2,400.00 towards the Original Note between when he obtained his discharge and when the Second Note was executed. Dr. Ex. 1. The Debtor then paid $4,241.76 towards the Second Note and $7,554.53 towards the Third Note. *Id.* The Bank sent the Debtor payment notices regarding the Third Note on the following dates: August 7, 2015; October 8, 2015; November 9, 2015; December 8, 2015; January 8, 2016; February 8, 2016; and March 8, 2016. Dr. Ex. 8; Bank Ex. N. There has been no evidence that the Bank sent late notices or otherwise tried to collect the debt between the date of the discharge and the date of the execution of the Second Note. The Court finds that the payments made by the Debtor during that time frame were voluntary and not made with any coercion by the Bank.

The Debtor testified and introduced documentary evidence showing that he has continuously maintained insurance on the Properties, as well as electricity and water services. Dr. Ex. 2. In addition, the Debtor has paid real estate taxes on the Properties. *Id.* These costs totaled $20,744.10. The Debtor testified that he would not have done so if he had known that the debt had been discharged. However, the terms of the Deed of Trust state "[g]rantor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the property when due." Bank Ex. B. p. 2. In addition, the Deed of Trust states that "[g]rantor shall keep Property insured against loss by fire, flood, theft, and other hazards and risks reasonably associated with the Property due to its type and location." *Id.* p. 3. The obligations would have continued even if the Debtor's obligation were only *in rem* in nature.

The Debtor introduced evidence that he paid his attorney a $5,500.00 retainer in relation to the current matter and that those fees have since been earned. Dr. Ex. 3. The Debtor testified that his counsel's bookkeeper estimates between $15,000.00 and $20,000.00 in additional attorneys' fees have been incurred. No fee agreement or time records were produced or offered

as evidence.  No additional evidence as to the amount of attorneys' fees incurred was presented; Debtor's counsel requested a further opportunity to present evidence of the balance of his fees. Counsel for the Bank conceded in open court that at least $5,500.00 in attorney's fees were fairly incurred by the Debtor in this case.[5]

The Debtor also called Randy Rasnake, a former collections officer at the Bank.  Mr. Rasnake testified as to the Bank's procedures for cases in which borrowers filed for bankruptcy protection during the time he was employed.  Mr. Rasnake testified that when the Bank learned a borrower had filed bankruptcy, the borrower's file would physically be transferred from the collections department to the legal department. At that point, the collections department was no longer permitted to contact the borrower. Mr. Rasnake could not recall any other cases in which the Bank had induced a borrower to sign a renewal note reviving an obligation previously discharged in bankruptcy.

Theda Viers, a loan officer at the Bank, was called by the Bank. Ms. Viers testified that she and the Debtor discussed the possibility of him taking out a loan with the Bank to purchase a new vehicle in April 2016. She testified that the Debtor wanted to add that loan to his current loan so as to have only one payment. Ms. Viers testified that the Debtor believed there was sufficient equity in the Properties to support this new obligation. Ultimately, the Debtor decided not to pursue this loan.

## CONCLUSIONS OF LAW

This Court has jurisdiction of this matter by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on

---

[5] The Debtor testified he also incurred $586.00 in court reporter fees in connection with depositions in the case, which he paid.

December 6, 1994, and Rule 3 of the Local Rules of the United States District Court for the

Western District of Virginia.  This Court further concludes that this matter is a "core" bankruptcy

proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I) and (O). The Court has already

determined in its Opinion of May 27, 2016 that the Bank violated the discharge injunction

imposed by 11 U.S.C. § 524. Accordingly, only the issue of the appropriate measure of sanctions

is at issue.

"[W]hile § 524 does not explicitly authorize an award of monetary damages for violation

of the discharge injunction, damages for those violations may be awarded under § 105(a). . . .

Such sanctions may include 'actual damages, attorney's fees and, when appropriate, punitive

damages.'" *In re Mead*, No. 10-09630-8-SWH, 2012 WL 627699, at *5 (Bankr. E.D. N.C. Feb.

24, 2012) (quoting *In re Cherry*, 247 B.R. 176, 187 (Bankr. E.D. Va. 2000)). The Debtor asks for

actual damages, attorneys' fees, and punitive damages. Each will be addressed in turn.

### I.        Actual Damages

As a measure of actual damages, Debtor argues that the entire amount paid to the Bank

post-discharge on each of the three notes is recoverable. In addition, the Debtor requests the total

amount paid to maintain insurance, water, and electricity services on the Properties post-

discharge. The Debtor also requests the total amount paid in real estate taxes on the Properties

post-discharge.

The Debtor voluntarily continued to make payments on the Original Note from the time

he obtained his discharge until the Second Note was executed. There is no evidence that the

Bank made any attempt to collect the discharged debt up until that point. No late notices were

sent and no collection phone calls were made. Thus, no violation of the discharge occurred until

the execution of the Second Note. Accordingly, the payments made on the Original Note are not

recoverable. However, the executions of the Second and Third Notes were in violation of the

discharge injunction. Rather than executing a non-recourse Note that renewed only the *in rem*

obligation, the Bank chose to revive the Debtor's discharged personal liability on the loan. No

reaffirmation agreement was ever executed, much less timely filed.  Thus, the Court will direct

the Bank to refund to the Debtor all payments made on the Second and Third Notes, totaling

$11,796.29.

The Debtor made payments totaling $20,744.10 for taxes, insurance, and utilities on the

Properties post-discharge. These payments did not stem from obligations under the notes, but

rather were *in rem* obligations contained in the deed of trust. Had the Bank not executed the

Second or Third Notes, the Debtor would nonetheless have been obligated to make these

payments up until the time the Bank foreclosed.  Had the Debtor not made the payments, these

amounts could have been paid by the Bank and charged against the collateral pursuant to the

terms of the deed of trust. Accordingly, these payments did not arise from the violation of the

discharge injunction and are not appropriate for recovery.

## II.      Attorneys' Fees

The Debtor provided the court with evidence that he paid his attorney $5,500.00 in this

matter. Debtor's counsel cites *In re Mickens*, 229 B.R. 114 (Bankr. W.D. Va. 1999), in support

of his request for a third hearing as an opportunity to present further evidence of his fees. In that

case, Judge Krumm allowed the debtor to file "an affidavit of damages sustained and attorney's

fees and costs incurred" following the initial hearing and gave opposing counsel an opportunity

to object to the calculation of damages. Here, unlike in *Mickens*, the issue of whether the Bank

violated the discharge injunction has already been decided. The present hearing was specifically

devoted to the appropriate measure of sanctions—and attorney's fees are typically included in a

7

measure of damages in cases of violations of the discharge injunction. The November 3, 2016 hearing was the Debtor's opportunity to present evidence of how he was damaged and the Court will not hold a further hearing on the matter. Having seen no fee agreement or attorney time records, the evidence before the Court demonstrates that the Debtor has incurred $5,500.00 in attorney fees and there is no evidence on the record to suggest that, in terms of "actual damages," the Debtor is actually obligated to pay any additional attorneys' fees. *Cf., e.g.*, *Skillforce, Inc. v. Hafer*, 509 B.R. 523, 534 (E.D. Va. 2014) (addressing recovery of attorneys' fees under 11 U.S.C. § 362(k)(1)). Nevertheless, counsel for the Bank conceded at trial that the $5,500.00 was fairly incurred.  Thus, the Bank will be directed to pay the Debtor $5,500.00 in compensation for the attorneys' fees he has incurred in the prosecution of this adversary proceeding, along with an additional payment of $586.00 in court reporter fees.

### III.    Punitive Damages

Punitive damages "may be appropriate under 11 U.S.C. § 105 when a creditor's actions are egregious or malevolent." *In re Workman*, 392 B.R. 189, 196 (Bankr. D. S.C. 2007) (citing *Cherry*, 247 B.R. at 189–90)). "[W]hether expressed as 'egregious conduct,' 'malevolent intent,' or 'clear disregard of the bankruptcy laws,' each of these decisions [awarding punitive damages] appear to employ the finding of creditor conduct beyond willfulness or deliberation and more closely resembling a specific intent to violate the discharge inunction in order to assess punitive damages." *Cherry*, 247 B.R. at 190 (collecting cases). Here, the Debtor has not shown that the Bank acted egregiously or with malevolent intent. Indeed, the Debtor's own witnesses provided no evidence of a pattern of similar misconduct. As determined in the Court's prior opinion, the

Bank acted willfully in its violation of the discharge injunction, but the Court does not find that it acted with the requisite degree of malevolence to require an award of punitive damages.

## CONCLUSION

For the foregoing reasons, the Court will Order the Bank to refund the Debtor $11,796.29 and pay an additional $6,086.00 to the Debtor in compensation for his attorneys' fees and costs. This sum shall be payable to the Debtor by delivery to Debtor's counsel within thirty (30) days from the date of entry of the corresponding Order.

An Order to such effect will be entered contemporaneously herewith.

Decided this  29TH  day of November, 2016.

_____
UNITED STATES BANKRUPTCY JUDGE